IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Edgardo Rodríguez Acevedo,

      Plaintiff,

        v.

DHL Express (USA), Inc.,

      Defendant.

**Civil No. 22-01539 (GMM)**

## OPINION AND ORDER

At its heart, this is a wrongful termination lawsuit in which Plaintiff Edgardo Rodríguez Acevedo ("Rodríguez") alleges that his employment with DHL Express (USA), Inc. ("DHL") was terminated without just cause. Rodríguez specifically claims that DHL failed to accommodate his disability and discriminatorily terminated his employment.

Before the Court is DHL's *Motion for Summary Judgment*. (Docket No. 52). The Court **GRANTS** DHL's *Motion for Summary Judgment.*

### I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Rodríguez started the litigation of this dispute on September 7, 2022, in state court.[1] The case was removed to this Court under diversity jurisdiction on November 14, 2022. (Docket No. 1). Critically, Rodríguez's initial complaint was limited to a claim

---

[1] The initial complaint was identified as civil action case number CA2022CV02935 and was brought before the Puerto Rico Court of First Instance, Carolina Superior Court. (Docket No. 1 ¶ 2).

for severance, back-pay, and compensatory and punitive damages for
DHL's termination of his employment without just cause in violation
of Law 80 of May 30, 1976, 29 L.P.R.A. §§ 185a *et seq.*, ("Law 80").
(Docket No. 10-1). On July 17, 2023, Rodríguez filed an *Amended
Complaint* against DHL. (Docket No. 33). Therein, Rodríguez
reiterated his Law 80 claims and added two discrimination causes
of action alleging failure-to-accommodate and wrongful employment
termination in violation of Puerto Rico Act No. 44 of July 2, 1985,
1 L.P.R.A. §§ 501 *et seq.* ("Law 44") and Puerto Rico Act No. 100
of June 30, 1959, 29 L.P.R.A. §§ 146 *et seq.* ("Law 100"). (Docket
No. 33 ¶¶ 36-37).

On September 18, 2023, DHL filed a *Motion to Dismiss
Discrimination Claims under Rule 12(b)(6)* ("Motion to Dismiss").
DHL asks that the Court dismiss Rodríguez's discrimination causes
of action under Law 100 and Law 44. DHL argues the claims are both,
time-barred under the applicable statute of limitations and
because, in any event, Act 100 does not apply to disability
discrimination claims. (Docket No. 35). On January 26, 2024, the
Court issued an Opinion and Order. It granted in part and denied
in part the Motion to Dismiss. (Docket No. 43). Thus, the Court
dismissed Rodríguez's discrimination claim under Law 100.

On March 27, 2024, the Court amended it *Case Management Order*
and extended, among others, the deadline to file motions for
summary judgment. (Docket No. 47). Subsequently, DHL filed a *Motion*

*for Summary Judgment* on August 12, 2024. (Docket No. 52). Therein, DHL denies having discriminated against Rodríguez based on his impairment or for any other illegal reason. DHL argues that Rodríguez fails to meet the *prima facie* elements of his disability discrimination claim insofar as he was unable to perform the essential functions of his job. (Docket No. 52-1 at 11-17).

Further, DHL posits that Rodríguez's employment was terminated because he was unable to work. (Id.) According to DHL, Rodríguez went on leave for his medical condition on May 29, 2020. Upon his return in August 2021, Rodríguez requested reasonable accommodations. In DHL's view, this amounted to an indefinite leave, since: (a) Rodríguez was still unable to work; and (b) had no medical recommendation or prognosis as to when he would be able to return to work in the future. (Id. at 52-1 at 2).

DHL also avers that although Rodríguez alleges that he informed that he was willing or able to occupy another less demanding position, there is no evidence to that effect. First, Rodríguez never applied for any vacant positions in DHL. Second, he did not establish that he was qualified to perform the functions of the two existing vacant positions. Third, he did not establish that he was able to work at all. (Id. at 15-17).

On September 23, 2024, Rodríguez filed his *Motion in Opposition for Summary Judgment*. (Docket No. 55). Therein, he and his wife Jaqueline Betancourt Rivera submitted sworn statements in

response to DHL's proposed uncontested facts. (Docket No. 55-1;
55-2). Rodríguez alleges that DHL "has been gerrymandering the
reasonable accommodation process to justify the fact that it had
no precedent in the company as to how to reasonably accommodate
Mr. Rodríguez within the company and relied on the fact that he
could not or would not return to his last position as Area
Operations Manager, which covered all Puerto Rico and U.S. Virgin
Island branches." (Docket No. 55 at 2).

Rodríguez further argues that DHL never adopted written
procedures to address a situation like his, where an employee in
an executive position requests a demotion or reassignment as
reasonable accommodation. (Id.). Related to this, he posits that
DHL never offered him a different position, even though he
continuously requested a "reassignment to a less stressful
position." (Id. at 4). In addition, he asserts that when he was
being processed for a reasonable accommodation, there was no skill
or qualification requirement for any of the two allegedly available
positions as informed by DHL. Consequently, "DHL could have at
least, given or offered him the opportunity to apply for any of
those positions." (Id. at 11).

On October 21, 2024, DHL filed a *Reply to Plaintiff's Motion
in Opposition to Summary Judgment*. (Docket No. 61). DHL asserts
that Rodríguez failed to comply with Federal Rule of Civil
Procedure Rule 56 ("Rule 56") and Local Rule 56 by not properly

responding to Defendant's *Statement of Uncontested Material Facts* and failing to establish the presence of any genuine issue of material fact. DHL reiterates that Rodríguez has no legal cause of action since he has not met his *prima facie* burden of his disability claim, and his inability to work constituted just cause for his employment termination. (Id. at 2).

## II.  LEGAL STANDARD

### A.  Fed. R. Civ. P. 56

Motions for summary judgment are governed by Federal Rule of Civil Procedure Rule 56 ("Rule 56"). *See* Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute of material fact "if the evidence 'is such that a reasonable jury could resolve the point in favor of the non-moving party.'" Taite v. Bridgewater State University, Board of Trustees, 999 F.3d 86, 93 (1st Cir. 2021) (*quoting* Ellis v. Fidelity Management Trust Company, 883 F.3d 1, 7 (1st Cir. 2018)). A fact is material "if it 'has the potential of affecting the outcome of the case.'" Id. (*quoting* Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)). In reviewing a motion for summary judgment, a court considers "the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. . ." Johnson v. University of Puerto Rico, 714

Civil No. 22-01539(GMM)
Page -6-

F.3d 48, 52 (1st Cir. 2013) (*citing* Thompson v. Coca-Cola Co., 522
F.3d 168, 175 (1st Cir. 2008)).

The moving party "bears the initial burden of showing that no
genuine issue of material fact exists." Feliciano-Muñoz v.
Rebarber-Ocasio, 970 F.3d 52, 62 (1st Cir. 2020) (citation
omitted). "Once a properly supported motion has been presented,
the burden shifts to the non-moving party to demonstrate that a
trier of fact reasonably could find in [its] favor." Rodriguez-
Reyes v. Molina-Rodriguez, 21 F.Supp.3d 143, 144 (D.P.R. 2014)
(*citing* Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d
46, 52 (1st Cir. 2000)) (internal citation omitted). "The nonmovant
may defeat a summary judgment motion by demonstrating, through
submissions of evidentiary quality, that a trial worthy issue
persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir.
2006). However, the nonmovant "cannot merely 'rely on an absence
of competent evidence, but must affirmatively point to specific
facts that demonstrate the evidence of an authentic dispute.'"
Feliciano-Muñoz, 970 F.3d at 62 (*quoting* McCarthy v. Nw. Airlines,
Inc., 56 F.3d 313, 315 (1st Cir. 1995)); *see also* River Farm Realty
Tr. v. Farm Family Cas. Ins. Co., 943 F.3d 27, 41 (1st Cir. 2019)
(holding that a nonmovant similarly cannot rely on "conclusory
allegations, improbable inferences, and unsupported speculation"
to defeat summary judgment).

Civil No. 22-01539(GMM)
Page -7-

    In ruling on a motion for summary judgment, a Court shall
admit facts that are properly supported and not properly
controverted. *See* Rodríguez-Severino v. UTC Aerospace Sys., Civil
No. 20-1901, 2022 WL 15234457, at *5 (1st Cir. Oct. 27, 2022).
However, a Court must simultaneously abstain from "[c]redibility
determinations, the weighing of the evidence, and the drawing of
legitimate inferences. . .[since these are] jury functions, not
those of a judge." Reeves v. Sanderson Plumbing Products, Inc.,
530 U.S. 133, 135 (2000).

B.   Local Civ. R. 56

    In this District, summary judgment is also governed by Local
Rule 56. *See* Local Civ. R. 56. "A party moving for summary judgment
must submit factual assertions in a separate, short, and concise
statement of material facts, set forth in numbered paragraphs."
Rosado v. Adorno-Delgado, No. CV 22-01182 (MAJ), 2024 WL 1076673,
at *3 (D.P.R. Mar. 12, 2024) (*quoting* Loc. Rule 56(b)) (internal
quotations omitted). This rule provides that a non-movant must
then "admit, deny or qualify the facts supporting the motion for
summary judgment by reference to each numbered paragraph of the
moving party's statement of material facts." Local Civ. R. 56(c).
"Pursuant to Local Rule 56(e), the parties must submit statements
of fact and oppositions thereto, and facts contained in a
supporting or opposing statement of material facts, if supported

Civil No. 22-01539(GMM)
Page -8-

by record citations as required by this rule, shall be deemed
admitted unless properly controverted." Ramirez-Rivera v. DeJoy,
No. 3:21-CV-01158-WGY, 2023 WL 6168223, at *1 (D.P.R. Sept. 22,
2023) (*quoting* Local Rule 56(e)) (internal quotation marks
omitted).

Failure to comply with Local Rule 56(c) allows the Court to
accept a party's proposed facts as stated. *See* López-Hernández v.
Terumo Puerto Rico LLC, 64 F.4th 22, 26 (1st Cir. 2023); *see also*
Natal Pérez v. Oriental Bank & Trust, 291 F.Supp.3d 215, 219
(D.P.R. 2018) ("If a party improperly controverts the facts, Local
Rule 56 allows the Court to treat the opposing party's facts as
uncontroverted."). Litigants ignore Local Rule 56(c) at their
peril. *See* López-Hernández, 64 F.4th at 26.

### III. UNCONTESTED FACTS

The Court examined DHL's *Statement of Uncontested Facts in
Support of Motion for Summary Judgment* ("DHL's Statement of
Uncontested Facts") and Rodríguez's *Motion in Opposition for
Summary Judgment* and accompanying exhibits. (Docket Nos. 52-2;
55). The Court notes that Rodríguez filed a sworn statement,
subscribed by him, in which he stated his "statements and replies
to each and every one of the premises of the defendant broken down
in the document number 52-2 filed on August 12, 2024 named
'STATEMENT OF UNCONTESTED FACTS IN SUPPORT OF MOTION FOR SUMMARY

Civil No. 22-01539(GMM)
Page -9-

JUDGMENT'." (Docket No. 55-2). However, Rodríguez did not submit with his opposition a separate, short, and concise statement of material facts. As stated, he only submitted a sworn statement, which does not directly admit, deny, or qualify the facts supporting summary judgment. In addition, even if the Court accepted this sworn statement as his "separate statement of material facts," Rodríguez does not provide in the opposing statements included therein support for each factual assertion with a citation to the evidentiary record as required by the Rule.

Here, Rodríguez failed to properly address Defendant's assertions of fact as required by Rule 56(c). Thus, this Court may consider Defendant's proposed facts undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). Rule 56(e) establishes "that a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but. . .must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) (*quoting* First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).

Furthermore, Local Civil Rule 56(e) provides that parties must submit statements of fact and oppositions thereto, and thus "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."

Civil No. 22-01539(GMM)
Page -10-

Local Civ. R. 56(e).  Local Rule 56 is an "anti-ferret rule. . . intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court." VCI, Inc. v. TForce Freight, Inc., No. CV 23-1148 (RAM), 2024 WL 4651017, at *3 (D.P.R. Nov. 1, 2024) (citing Lopez-Hernandez, 64 F.4th at 26). Accordingly, "[u]nder Local Rule 56, a district court is free, in the exercise of its sound discretion to accept the moving party's facts as stated. . .when the statements contained in the movant's Statement of Uncontested Facts. . .are not properly controverted." Id. "[V]iolations of this local rule are astoundingly common and constitute an unnecessary burden to the trial court's docket and time." Id. Decisively, "**[t]he First Circuit's repeated admonition on this issue in the last few years, places the Puerto Rico federal bar on clear notice that compliance with Local Rule 56 is a mandate, not a suggestion.**" Ramirez-Rivera v. DeJoy, 693 F.Supp.3d 210, 213 (D.P.R. 2023) (emphasis added).

Rodríguez failed to comply with Local Rule 56(c). He did not submit an opposing statement admitting or controverting DHL's Statement of Uncontested Facts nor did he support his opposition with reference to record citations as required by Local Rule 56(C). "The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." Local Civ. R. 56(e). As such, the

Civil No. 22-01539(GMM)
Page -11-

Court finds all of DHL's uncontested facts (Docket No. 52-2) to be

uncontroverted and admits those properly supported by a record

citation.

Accordingly, the Court makes the following findings of fact:

1. DHL is a worldwide logistics company that provides courier, package delivery, and express mail services to its customers. (Docket Nos. 52-2 ¶ 1; 52-4).

2. In Puerto Rico, DHL's main station is in San Juan, with two (2) satellite stations located in Ponce and Aguadilla. (Docket Nos. 52-2 ¶ 2; 52-19 at 24 ¶¶ 9-18).

3. Rodríguez began working for DHL on August 9, 1991. (Docket Nos. 52-2 ¶ 3; 52-19 at 20 ¶¶ 2-6).

4. According to Plaintiff's employee file, Rodríguez occupied the following positions during his employment at DHL:
   a. Customer Service Agent: 1991
   b. International Service Agent: 1991-1995
   c. Courier Guard: 1996-1998
   d. Lead Courier Guard: 1998-2000
   e. City Service Supervisor I/II: 2000-2004
   f. Field Services Supervisor: 2004-2006
   g. District Field Services Manager: 2006-2008
   h. Station Services Manager: 2008-2010
   i. Area Operations Manager: 2010-2021

   (Docket Nos. 52-2 ¶ 4; 52-4 at ¶ 6; 52-20 at 2 ¶ 2).

5. As Area Operations Manager, Rodríguez oversaw DHL's operations in his district, which included Puerto Rico and the U.S. Virgin Islands. (Docket Nos. 52-2 ¶ 5; 52-19 at 21).

6. In general terms, as Area Operations Manager, Rodríguez was responsible for the overall operations regarding pick-up and delivery personnel and services in his district. (Docket Nos. 52-2 ¶ 6; 52-22).

7. As Area Operations Manager, Rodríguez reported to several Regional Service Directors, the last being Juan

Cucalón ("Cucalón"). (Docket Nos. 52-2 ¶ 7; 52-19 at 23 ¶¶ 1-16).

8. As Area Operations Manager, Rodríguez directly supervised four (4) managers in San Juan, while the Ponce and Aguadilla station personnel reported indirectly to the San Juan station to maintain service levels. (Docket Nos. 52-2 ¶ 8; 52-19 at 24 ¶¶ 1-24).

9. As Area Operations Manager, Rodríguez was DHL's highest-ranking officer in Puerto Rico since the Regional Service Directors he reported to were located in Miami. (Docket Nos. 52-2 ¶ 9; 52-19 at 28 ¶¶ 11-21).

10. During the COVID-19 pandemic, DHL's operation increased due to the lockdown, which caused everyone to stay at home and make more orders. (Docket Nos. 52-2 ¶ 10; 52-19 at 29-30).

11. Rodríguez was diagnosed with high blood pressure, or hypertension, between September and October 2018. (Docket Nos. 52-2 ¶ 11; 52-19 at 44 ¶ 23-24; 45 ¶¶ 1-3).

12. After his diagnosis, Rodríguez was placed on short-term disability leave for about nine (9) months, returning in August 2019. (Docket Nos. 52-2 ¶ 12; 52-19 at 45 ¶¶ 7-24).

13. Rodríguez did not request any reasonable accommodation upon his return to work in August 2019. (Docket Nos. 52-2 ¶ 13; 52-19 at 57 ¶¶ 19-22).

14. DHL partners with Sedgwick CMS ("Sedgwick") to assist in reasonable accommodation request determinations and short-term disability benefit evaluations. (Docket Nos. 52-2 ¶ 14; 52-19 at 57 ¶¶ 5-18 and 58 ¶¶ 10-18).

15. DHL partners with UNUM Insurance ("UNUM") for the payment of short- and long-term disability leave benefits. (Docket Nos. 52-2 ¶ 15; 52-19 at 57 ¶¶ 8-19).

16. DHL's Employee Handbook contains its Reasonable Accommodation Policy, which Rodríguez received. (Docket Nos. 52-2 ¶ 16; 52-4 at ¶ 16; 52-19 at 60 ¶¶6-15).

17. DHL's Reasonable Accommodation Policy states:

> If you believe that you may need a reasonable
> accommodation in order to perform the essential
> functions of your position, you shall inform your
> manager and/or Human Resources of the need for an
> accommodation. You will then be required to file a
> request for an accommodation with Sedgwick CMS by
> calling 877-365-4345. Once a request for
> accommodation has been made, Human Resources will
> partner with Sedgwick CMS to conduct an
> individualized assessment to determine possible
> accommodations that will allow the employee to
> perform the essential functions of their position
> without creating an undue hardship on the operation
> of the business.

(Docket Nos. 52-2 ¶ 17; 52-4 at ¶ 17; 52-23 at 3).

18. On May 28, 2020, Rodríguez suffered a hypertensive
    episode in the workplace, which required his wife to pick
    him up and take him to the emergency room. (Docket Nos.
    52-2 ¶ 18; 52-19 at 63 ¶¶ 1-23; 64).

19. After stabilizing his high blood pressure, Rodríguez was
    referred to a cardiologist for treatment, Dr. Hector L.
    Banchs Pieretti ("Dr. Banchs"). (Docket Nos. 52-2 ¶ 19
    at 66 ¶¶ 1-19).

20. On June 1, 2020, Rodríguez began his request for short-
    term disability benefits with Sedgwick. (Docket Nos. 52-
    2 ¶ 20; 52-19 at 69 ¶¶ 14-21; 71 ¶¶ 2-14).

21. DHL retroactively approved Rodríguez's short-term
    disability benefits to May 29, 2020, the day after the
    hypertensive episode that landed him in the hospital.
    (Docket Nos. 52-2 ¶ 21; 52-19 at 76 ¶¶ 4-10).

22. Rodríguez received short-term disability benefits from
    May 29, 2020, to August 7, 2020. (Docket Nos. 52-2 ¶ 22;
    52-19 at 80 ¶¶ 5-18).

23. Because the hypertensive episode on May 28, 2020,
    happened in the workplace, DHL referred him to the State
    Insurance Fund ("SIF") for evaluation and treatment.
    (Docket Nos. 52-2 ¶ 22; 52-19 at 80 ¶¶ 5-18).

24. Rodríguez went to the SIF on September 2020. The SIF initially released him while on "CT" or under treatment. (Docket Nos. 52-2 ¶ 23; 52-19 at 86 ¶¶ 1-15).

25. In that same month, September 2020, the SIF's doctors told Rodríguez that he could not return to work and placed him on full rest. (Docket Nos. 52-2 ¶ 24; 52-19 at 88 ¶¶ 6-24 and 89 ¶¶ 1-3).

26. Almost one year later, on August 17, 2021, the SIF discharged Rodríguez. (Docket Nos. 52-2 ¶ 25; 52-19 at 98 ¶¶ 9-15).

27. In August 2021, Rodríguez, again, requested short-term disability benefits. (Docket Nos. 52-2 ¶ 26; 52-19 at 102 ¶¶ 12-24 and 103 ¶¶ 1-6).

28. As part of the request for short-term disability benefits, Rodríguez submitted two (2) fitness for duty certifications: one from his cardiologist, Dr. Banchs, and one from his psychiatrist, Dr. Ramses Normandía ("Dr. Normandía"). (Docket Nos. 52-2 ¶ 27; 52-19 at 103 ¶¶ 14-24; 104 ¶¶ 1-5; 52-26).

29. Both, Dr. Banchs and Dr. Normadía stated in their fitness for duty certifications that Rodríguez was unable to return to work. (Docket Nos. 52-2 ¶ 28; 52-19 at 104 ¶¶ 6-12).

30. The "Fitness for Duty Certification" filled out by Dr. Banchs in August 2021 stated that:

    a. Rodríguez stopped working, beginning on May 29, 2020. (Docket No. 52-26 at 2 Section B).

    b. Rodríguez did not return to work. (Docket No. 52-26 at 3 Section B).

    c. Rodríguez "continued with arterial hypertension which was triggered by emotional -stress work environment. Arterial hypertension has been difficult to control. He has continued with shortness of breath and functional capacity limitation." (Docket No. 52-26 at 3 Section C).

31. The "Short Term Disability Claim Form" filled out by Dr. Normandía on August 12, 2021, stated that:

   a. Rodríguez was not advised to return to work. (Docket No. 52-27 at 2 Section B).

   b. Rodríguez "is depressed, crying, sad, unsocial, anxious, nervous, restless, cannot concentrate, cannot sleep, worried, has panic attacks that cause vomiting, chest pain, sweating and headache[s]. He is very stressed." (Docket No. 52-27 at 2 Section C).

   c. Rodríguez's restriction to work would last until August 5, 2022. (Docket No. 52-27 at 2 Section C).

32. Dr. Normandía also sent a medical certificate to DHL dated August 5, 2021, stating that Rodríguez was his patient, and that he "is not emotionally stable to return to work. Will be out on sick leave from August 5th, 2021 to August 5th, 2022. He will continue in psychiatric treatment. . ." (Docket No. 52-28).

33. UNUM approved Rodríguez's short-term disability benefits from August 25, 2021, through September 2, 2021. (Docket Nos. 52-2 ¶ 32; 52-19 at 111 ¶¶ 4-6; 52-29).

34. On August 17, 2021, Sedgwick sent a letter to Rodríguez indicating that he had submitted a request for reasonable accommodation, and that he had to send the provided accommodation substantiation form. (Docket Nos. 52-2 ¶ 33; 52-19 at 106 ¶¶ 5-9; 52-30).

35. The "Accommodation Substantiation Form" that Rodríguez submitted to Sedgwick, filled out by Dr. Banchs, stated that:

   a. Rodríguez's impairment was "uncontrolled hypertension." (Docket No. 52-31 at ¶ 1).

   b. The duration of Rodríguez's impairment was "undefined." (Id. at ¶ 2).

   c. Rodríguez's impairment affected the following major life activities: bending, breathing, caring for self, concentrating, interacting with others,

lifting, performing manual tasks, reaching, sleeping and walking. (<u>Id.</u> at ¶ 8).

d. Rodríguez's impairment affected the following bodily functions: brain, cardiovascular, and respiratory. (<u>Id.</u> at ¶ 11).

e. Rodríguez could not perform his job, with or without accommodation. (<u>Id.</u> at ¶ 12).

f. Rodríguez's return to work date could not be determined. (<u>Id.</u> at ¶ 12(a)).

g. Dr. Banchs' level of confidence for Rodríguez to be able to return to work was "less than 25%." (<u>Id.</u> at ¶ 13).

h. Rodríguez was "not released to work." (<u>Id.</u> at ¶ 14, 15).

i. In an eight (8) hour workday, Rodríguez could only lift/carry or push/pull objects between 0-5 pounds. (<u>Id.</u> at 2).

j. In an eight (8) hour workday, Rodríguez could "never" bend/stoop/crouch, climb, balance, twist upper body, reach at shoulder level, squat/kneel, use hands repetitively, use vibrating tools or equipment, or flex/extend neck. (<u>Id.</u>).

k. In an eight (8) hour workday, Rodríguez could "occasionally" use a keyboard with his left hand, use a mouse, speak, or use his hands to grip/grasp/turn. (<u>Id.</u>).

l. Rodríguez could sit/stand for up to 1 hour a day and walk up to half an hour per day. (<u>Id.</u> at ¶ 16).

m. Rodríguez was incapacitated since May 29, 2020, and the period of his incapacity was "undefined." (<u>Id.</u> at ¶ 18).

n. Rodríguez's impairment would cause episodic flare-ups every two (2) to four (4) weeks, which would prevent him from performing his job functions. (<u>Id.</u> at ¶ 23).

o. Rodríguez's performance of his job functions would result in a direct safety and health threat to him and to others. (Id. at ¶ 25).

p. On the same date Dr. Banchs treated Rodríguez and filled out the "Accommodation Substantiation Form," Rodríguez was referred to the hospital due to his "symptomatic, uncontrolled hypertension." (Id. at ¶ 26,27).

36. Sedgwick informed DHL that Rodríguez's accommodation request was to be kept on continuous leave. (Docket Nos. 52-2 ¶ 35; 52-4 ¶ 29).

37. On September 22, 2021, Sedgwick informed Rodríguez that "[a]s of today, your request for an accommodation will be closed because, employer is unable to accommodate request." (Docket Nos. 52-2 ¶ 36; 52-19 at 115 ¶¶ 8-23; 52-32).

38. Cucalón and Maureen Barr ("Barr"), DHL's former Human Resources Manager, informed Rodríguez that his accommodation request had been denied, given that his condition as certified by his physician stated that he was unable to work, and the duration of his impairment was indefinite at the time. (Docket Nos. 52-2 ¶ 37; 52-4 ¶ 31).

39. On September 28, 2021, Rodríguez was informed via e-mail that his short-term disability benefits were ending, and that he was being considered for the approval of long-term disability benefits. (Docket No. 52-2 ¶ 38).

40. Dr. Banchs filled out another "Disability Claims Form," dated October 18, 2021. (Docket Nos. 52-2 ¶ 39; 52-33).

41. The "Disability Claims Form" filled out by Dr. Banchs on October 18, 2021, stated that:

a. Rodríguez's primary diagnosis was hypertensive cardiovascular disease, and his secondary diagnosis was anxiety. (Docket No. 52-33 at 1, Section B).

b. He did not advise Rodríguez to return to work. (Id. at 2, Section B).

      c. He instructed Rodríguez to "[a]void emotional job stressors –this can cause worsening of blood pressure control." (<u>Id.</u> at 2, Section C).

      d. As to the duration of this restriction, he stated that Rodríguez's restriction to work was "indefinite." (<u>Id.</u>)

42. Rodríguez began receiving long-term disability benefits on October 25, 2021, with the first payment covering the period from November 27, 2020, through October 26, 2021. (Docket Nos. 52-2 ¶ 41; 52-34).

43. UNUM's letter informing Rodríguez of the approval of his long-term disability benefits defined "disability" for purposes of receiving long-term disability benefits:

    You are disabled when Unum determines that:

    - you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
    - you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

    After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

    (Docket Nos. 52-2 ¶ 42; 52-34 at 3).

44. On October 29, 2021, Barr contacted Rodríguez to inform him that they had verified his disability benefits status with UNUM, and that Cucalón would contact him soon. (Docket Nos. 52-2 ¶ 43; 52-19 at 156 ¶¶ 7-12).

45. On November 2, 2021, Rodríguez met with Cucalón and Barr, who informed him that DHL had decided to terminate his employment because they needed to occupy his position of Area Operations Manager and because his return-to-work date at the time could not be determined. (Docket Nos. 52-2 ¶ 44; 52-4 at ¶ 34; 52-19 at 159 ¶¶ 8-12).

Civil No. 22-01539(GMM)
Page -19-

46. At the time of Rodríguez's employment termination, DHL had the following vacant administrative positions:

   a. Station Service Manager (San Juan Office): this position was opened on June 30, 2020, and closed on November 30, 2021. DHL never filled the vacancy.
   b. Field Services Supervisor (Ponce Office): this position was opened on July 7, 2020, and closed on May 11, 2022. DHL never filled the vacancy.

   (Docket Nos. 52-2 ¶ 45; 52-4 at ¶ 35).

47. Both positions previously mentioned were physically demanding, requiring more physical presence in the ramp area overseeing the loading and unloading of merchandise. (Docket Nos. 52-2 ¶ 46; 52-4 at ¶ 36).

48. Rodríguez never applied for either of the vacant positions. (Docket Nos. 52-2 ¶ 47; 52-4 at ¶ 37).

49. On Nov 29, 2021, the position of Area Operations Manager, previously occupied by Rodríguez, was opened for hire, which was eventually occupied on February 25, 2022, when Rafael Medina was internally hired from the Houston office. (Docket Nos. 52-2 ¶ 48; 52-4 at ¶ 38).

50. Rodríguez continued to receive long-term disability benefits until December 12, 2022. (Docket Nos. 52-2 ¶ 49; 52-19 at 154 ¶¶ 1-24; 52-35).

51. Rodríguez did not return to work after the termination of his long-term disability benefits. (Docket Nos. 52-2 ¶ 50; 52-19 at 177 ¶¶ 9-14).

52. After his long-term disability benefits ended, Rodríguez applied for and began receiving Social Security disability benefits. (Docket Nos. 52-2 ¶ 51; 52-19 at 182 ¶¶ 7-11).

Civil No. 22-01539(GMM)
Page -20-

## IV.  APPLICABLE LAW AND ANALYSIS

A.    Law 44 — Failure to Accommodate Claim

In his Amended Complaint, Rodríguez claims that DHL violated its duty to provide him with a reasonable accommodation for his uncontrolled arterial hypertension and anxiety disorder under Law 44. DHL requests summary judgment. It argues that Rodríguez's failure to accommodate claim fails as a matter of law since he was unable to return to work and, therefore, could not show that he was a qualified individual who could perform the essential duties of his position as Area Operations Manager.

Law 44 is the Puerto Rico law analogue of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq, and requires the same elements of proof. Lahens v. AT&T Mobility Puerto Rico, Inc., 28 F.4th 325, 337 (1st Cir. 2022) ("[Law 44] was modeled after the ADA. It was intended to harmonize Puerto Rico law with the federal statutory provisions of the ADA. Thus, the elements of proof for a claim under Law 44 are essentially the same as for a claim under the ADA.") (internal citations omitted) (citing Torres v. House of Representatives of the Commonwealth of P.R., 858 F.Supp.2d 172, 194 (D.P.R. 2012)).

Under ADA and Law 44, a "qualified individual" is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 1211(8); 1 L.P.R.A. §

501 (e). "Under the ADA, employers are required to provide reasonable accommodation to an otherwise qualified applicant or employee with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the employer's business." Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 106 (1st Cir. 2005).

The First Circuit has stated that "whether a requested accommodation is reasonable or whether it imposes an undue hardship are questions typically proved through direct, objective evidence. Accordingly,. . .the McDonnell Douglas model does not apply to ADA discrimination claims based on failure to reasonably accommodate." Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 n.3 (1st Cir. 2001) (citing Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999)). The Court, therefore, applies the First Circuit's reasonable accommodation framework, rather than the McDonnell Douglas framework to the extent that Rodríguez bases his discrimination claims on DHL's alleged failure to reasonably accommodate his disability. See Tobin, 433 F.3d at 106-107.

To survive a motion for summary judgment on a reasonable accommodation claim under the ADA, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he was able to perform the essential functions of his job, either with or without a reasonable accommodation; and (3) the employer knew of his disability yet failed to reasonably accommodate it. Audette v.

Civil No. 22-01539(GMM)
Page -22-

Town of Plymouth, 858 F.3d 13, 20 (1st Cir. 2017) (*quoting* Lang v.
Wal-Mart Stores E., L.P., 813 F.3d 447, 454 (1st Cir. 2016));
Valle-Arce v. P.R. Ports Authority, 651 F.3d 190, 198 (1st Cir.
2011).

　　Turning to the first *prima facie* element, the Court will
assume, without deciding, that Rodríguez had a disability within
the meaning of the ADA, hence Law 44. For purposes of this
discussion, therefore, Rodríguez met the first prong.

　　As for the second element —the essential functions issue—
Rodríguez had to show that he *could* perform the *essential* duties
of his position, either *with or without a reasonable accommodation.*
"An essential function is a 'fundamental job duty of the position
at issue. The term does not include marginal tasks, but may
encompass individual or idiosyncratic characteristics' [sic] of
the job.'" Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 88 (1st
Cir. 2012) (*quoting* Kvorjak v. Maine, 259 F.3d 48, 55 (1st Cir.
2001)). Courts consider factors such as "the employer's judgment,
written job descriptions, the work experience of past incumbents
of the job, and the current work experience of incumbents in
similar jobs," and give a "significant degree of deference to an
employer's business judgment about the necessities of a job." Id.
(internal quotation marks omitted). Furthermore, courts consider
"evidence of the amount of time spent performing the particular
function." Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 25

Civil No. 22-01539(GMM)
Page -23-

(1st Cir. 2002). "Courts take into consideration factors other than the employer's determination of the essential functions of the job not 'to second-guess legitimate business judgments, but, rather, to ensure that an employer's asserted requirements are solidly anchored in the realities of the workplace, not constructed out of whole cloth.'" Gillen, 238 F.3d at 25.

In this case, as per the job description on the record submitted by DHL, an Area Operations Manager "provides operational management and support at various service center locations to ensure efficient and timely pick-up and delivery handling of customer materials and shipments. Ensures compliance with safety, security, regulatory, and company policies." (Docket No. 52-22). Furthermore, as per Rodríguez's testimony during his deposition, he was DHL's highest-ranking officer in Puerto Rico. (Docket No. 52-19 at 28).

DHL argues that Rodríguez's medical restrictions limited him in such a way that he *could not* perform *any* of the essential duties of his position, *with or without an accommodation*, because he was simply unable to work. The record shows that according to his own physicians, Rodríguez's medical conditions limited him to the extent that he could not perform the essential duties of his position of Area Operations Manager, with or without an accommodation, to the point that he was never released to return to work. It is uncontested that Rodríguez's doctors consistently

informed DHL —through the forms they certified— that his medical condition did not allow him to work. Specifically, in the "Accommodation Substantiation Form" Rodríguez submitted, his cardiologist, Dr. Banchs, stated that his medical condition affected the following major life activities: bending breathing, caring for self, concentrating, interacting with others, lifting, performing manual tasks, reaching, sleeping and walking; that in an eight (8) hour workday, he could "never" bend/stoop/crouch, climb, balance, twist the upper body, reach shoulder level, squat/kneel, use hands repetitively, use vibrating tools or equipment, or flex/extend neck; that he could "occasionally" use a keyboard with his left hand; that a return to work date could not be determined; and more importantly, that he was not able to perform his job, with or without accommodation. Moreover, the reasonable accommodation request clearly states that the duration of Rodríguez's impairment was "undefined," and the period of incapacity ranges from May 29, 2020, to "undefined." *See* (Docket No. 52-31).

In addition, as part of the process of requesting short-term disability benefits, Rodríguez submitted two (2) "Fitness for Duty Certifications," one from Dr. Banchs and one from his psychiatrist, Dr. Normandía, in which both physicians concluded that Rodríguez was unable to work. See (Docket Nos. 52-26; 52-27). Rodríguez did not provide evidence as to how his inability to work for purposes

of obtaining disability benefits is consistent with his argument that he is a qualified individual for his disability discrimination claim. *See* Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999); Thompson v. Gold Medal Bakery, Inc., 989 F.3d 135 (1st Cir. 2021).

Furthermore, the First Circuit has held that "attendance is an essential function of any job." Rios-Jimenez v. Principi, 520 F.3d 31, 42 (1st Cir. 2008) (holding that an employee who frequently missed work was not a qualified individual able to perform the essential functions of her job, either with or without a reasonable accommodation, as required to support disability discrimination and reasonable accommodation claims under the Rehabilitation Act). It is uncontested that Rodríguez had been on various forms of leave for over a year, since May 29, 2020. Even if his absenteeism was tied to his illness, the **"[i]nability to work for a multi-month period removes a person from the class protected by the ADA."** Byrne v. Avon Products, Inc., 328 F.3d 379, 381 (7th Cir. 2003) (emphasis added). *See also* Perkins v. Ameritech Corp., 161 Fed.Appx. 578 (7th Cir. 2006) (affirming summary judgment dismissing ADA claims of former employee who suffered depression, anxiety, and fibromyalgia because her failure to appear regularly for work removed her from the class of "qualified individuals" protected by the ADA). Simply put, "one who does not come to work cannot perform any of his job functions, essential or

otherwise." <u>Wimbley v. Bolger</u>, 642 F.Supp. 481 (W.D.Tenn.1986), aff'd, 831 F.2d 298 (6th Cir. 1987). In fact, **"[i]f the plaintiff, with or without reasonable accommodation, cannot perform an essential function of the job, then he is not a qualified individual and there is no duty to accommodate."** <u>Calef v. Gillette Co.</u>, 322 F.3d 75, 86 n. 8 (1st Cir. 2003) (emphasis added) (*citing* <u>Leary v. Dalton</u>, 58 F.3d 748, 753-54 (1st Cir. 1995)).

Rodríguez's failure to accommodate claim requires sufficient evidence that he was a "qualified individual." *See* <u>Tobin</u>, 433 F.3d at 107; 42 U.S.C. § 12111(8). He has not presented such evidence. Even if the Court examines the facts in the light most favorable to Rodríguez, it finds that he has failed to establish that he could perform his essential job functions. Rather, the undisputed evidence, as discussed earlier, includes admissions at his deposition and in his briefing that he was not a "qualified individual."

The Court's analysis could end here. Nevertheless, Rodríguez claims that he could have done his job had DHL granted him a reasonable accommodation. To this extent, Rodríguez avers that DHL could have reasonably accommodated him by either: (1) keeping him on continuous leave; or (2) reassigning him to a "lower-level position." DHL challenges both proposed accommodations as unreasonable. It argues that an employer is neither required to

provide an employee with an accommodation of his choice nor to accommodate an otherwise "unqualified individual."

### 1. Request for an indefinite leave

At the outset, it is correct that an employer is not obliged to provide an employee with the accommodation he requests or prefers; the employer needs only to provide some reasonable accommodation. *See* Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996); Schmidt v. Methodist Hospital, 89 F.3d 342, 344-45 (7th Cir. 1996). Rodríguez bears the burden of showing the existence of a reasonable accommodation. *See* Reed v. LePage Bakeries, Inc., 244 F.3d 254, 258 (1st Cir. 2001). To satisfy that burden, "a plaintiff needs to show not only that [(1)] the proposed accommodation would enable him to perform the essential functions of her job, but also that, [(2)] at least on the face of things, it is feasible for the employer under the circumstances." Id. at 259. The First Circuit has referred to the second aspect of this burden as an obligation to show that the requested accommodation is "facially reasonable." Reed, 244 F.3d at 260; *see also* Delgado-Echevarria v. AstraZeneca Pharm. LP, 856 F.3d 119, 127 (1st Cir. 2017). This is where Rodríguez's arguments fall short.

Turning to Rodríguez's requested accommodation for a continued leave, it is settled that a leave of absence or extension can constitute a reasonable accommodation under the ADA "in some

Civil No. 22-01539(GMM)
Page -28-

circumstances." <u>García-Ayala v. Lederle Parenterals, Inc.</u>, 212 F.3d 638, 647 (1st Cir. 2000); *see also* <u>Criado v. IBM Corp.</u>, 145 F.3d 437, 443 (1st Cir. 1998). "Whether [a] leave request is reasonable turns on the facts of the case." <u>García-Ayala</u>, 212 F.3d at 647 (alterations in original) (*quoting* <u>Criado</u>, 145 F.3d at 443). Yet, as the First Circuit has stated, "the fact-intensive nature of the reasonable-accommodation inquiry does not insulate disability-discrimination cases from summary judgment." <u>Delgado-Echevarría v. AstraZeneca Pharm. LP</u>, 856 F.3d at 128. To the contrary, a plaintiff must show that the requested accommodation is facially reasonable even at the summary-judgment stage. *See* <u>Reed</u>, 244 F.3d at 259-60. And, where a plaintiff fails to show facial reasonableness, summary judgment for the defendant is appropriate. <u>Delagdo-Echevarría</u>, 856 F.3d at 128.

The First Circuit has further stated that "[c]ompliance with a request for a lengthy period of leave imposes obvious burdens on an employer, not the least of which entails somehow covering the absent employee's job responsibilities during the employee's extended leave." <u>Delgado-Echevarria</u>, 856 F.3d at 131. "Undue hardships are not limited to financial impacts; the term includes accommodations that are unduly extensive, substantially disruptive, or that would fundamentally alter the nature or operation of the business." <u>Garcia-Ayala</u> 212 F.3d at 650.

Here, it is uncontested that at the time of his termination of employment on November 2, 2021, Rodríguez had been absent from his job since May 2020, well over one year. During that time, he was afforded different leaves, and none of his doctors ever cleared him to return to work. On the contrary, every medical certification that is on record states that he could not return to work because of his medical condition and that the duration of his incapacity was "undefined." After examining his "Accommodation Substantiation Form," together with all the uncontested facts and evidence on record, it is clear that Rodríguez's request amounted to an indefinite leave. To this point, the First Circuit has undoubtedly acknowledged that "a request for an extended leave could indeed be too long to be a reasonable accommodation and no reasonable factfinder could conclude otherwise." García-Ayala, 212 F.3d at 649. Most recently, the First Circuit reiterated that "[c]ourts confronted with similar requests. . .have concluded that such requests are not facially reasonable." Sarkisian v. Austin Prep. Sch., 85 F.4th 670, 676 (1st Cir. 2023) (citing Delgado-Echevarria, 856 F.3d at 130 (collecting cases)).

Our sister circuits have similarly found requests for an extended leave to be unreasonable accommodation requests. See Hwang v. Kan. State Univ., 753 F.3d 1159, 1162-63 (10th Cir. 2014) (Gorsuch, J.); Luke v. Bd. of Trustees of Fla. A & M Univ., No. 15-13995, 674 Fed.Appx. 847, 850, 2016 WL 7404677, at *3 (11th

Cir. Dec. 22, 2016) (holding that request for additional leave, after the employee had already received nine months of leave, was an unreasonable accommodation request where the employee would remain unable to perform essential functions for another six months); Stallings v. Detroit Pub. Schs., 658 F. App'x 221, 226-27 (6th Cir. 2016) (holding that teacher's request for four months' leave was not a reasonable accommodation); Epps v. City of Pine Lawn, 353 F.3d 588, 593 n.5 (8th Cir. 2003) (concluding that employee failed to show that requested accommodation of six months of leave was reasonable); Larson v. United Nat. Foods W., Inc., 518 F. App'x 589, 591 (9th Cir. 2013) ("[A]n indefinite, but at least six-month long, leave of absence to permit [the employee] to fulfill the [substance-abuse professional's] treatment recommendations so that he might eventually be physically qualified under the DOT regulations is not a reasonable accommodation."); Byrne v. Avon Prods., Inc., 328 F.3d 379, 380-81 (7th Cir. 2003) (suggesting that two months employee spent away from work for treatment for mental difficulties would not qualify as reasonable accommodation because "[i]nability to work for a multi-month period removes a person from the class protected by the ADA.").

Rodríguez was DHL's highest-ranking officer in Puerto Rico and was responsible for DHL's operations throughout the Island. Certainly, an 18-month absence from work, followed by an indefinite

leave request with no foreseeable return date, cannot be deemed reasonable. Therefore, the Court concludes that Rodríguez has not carried his burden to demonstrate that his request for a further leave of absence was facially reasonable. Rodríguez's claims cannot survive summary judgment if he cannot show, at a minimum, that his proposed accommodation "seems reasonable on its face," US Airways, Inc. v. Barnett, 535 U.S. 391, 401 (2002).

　　　　2. Request for reassignment to a "lower-level position"

　　　　Rodríguez also claims that DHL could have reassigned him to a "lower-level position" as a reasonable accommodation. Certainly, the ADA provides that a "reasonable accommodation" may include "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). However, as a first step, the employee must demonstrate that there is an actual vacant position to which he can transfer. Lang v. Wal-Mart Stores E., L.P., 813 F.3d at 456. Failure-to-reassign claims are nuanced and differ from other causes of action arising from requests for reasonable accommodations. Audette v. Town of Plymouth, 858 F.3d 13, 20-21 (1st Cir. 2017). "[The] burden for the employee at the second step of the inquiry changes slightly when an employee becomes disabled, can no longer perform the essential functions of [his] job, and requests as an accommodation a transfer or complete reassignment of duties." Id. at 20. "Instead of addressing the essential functions of [his] current position,

an employee must demonstrate that [he] can perform the essential functions of the position [he] desires." Id. at 21.

As to this reasonable accommodation request, the record is devoid of any evidence that establishes a valid claim. First, Rodríguez has failed to identify, much less demonstrate, which — if any— vacant position existed at DHL at the time. Second, he has failed to show that he could perform the essential functions of the "lower-level position" he desired. On the contrary, the record reflects that at the time of Rodríguez's termination, two vacant administrative-level positions existed, which were more physically demanding than the Area Operations Manager position he held. Therefore, this failure to accommodate claim also fails.

Having found that Rodríguez failed to establish a valid claim under the ADA because he failed to meet the requisite elements of a *prima facie* failure to accommodate claim, his claim under Law 44 —which has essentially the same elements of proof as an ADA claim— suffers the same fate. Consequently, his claims under Law 44 shall be dismissed with prejudice.

B. Law 80 — Wrongful Termination

Law 80 is Puerto Rico's unjust dismissal statute. 29 L.P.R. § 185a *et seq.*; Otero-Burgos v. Inter American University, 558 F.3d 1, 7-9 (1st Cir. 2009). It defines just cause for dismissal and provides a severance-payment remedy for those employees who

Civil No. 22-01539(GMM)
Page -33-

can establish that they were wrongfully dismissed pursuant to that statute. According to this statute, "[j]ust cause for discharge of an employee shall be understood to be that which is not based on legally prohibited reasons and on a whim of the employer." 29 L.P.R.A. § 185b. Law 80 specifies, among others, that the following grounds are considered good cause for termination:   when the employee "indulges in a pattern of improper or disorderly conduct," id. §185b(a); "the employee engages in a pattern of deficient, inefficient, unsatisfactory, poor, slow or negligent performance," which "includes noncompliance with the employers' quality and safety rules and standards, low productivity, lack of competence or ability to perform the work at reasonable levels as required by the employer and repeated complaints from the employer's customers," id. §185b(b); and there are "[t]echnological or reorganization changes as well as changes of style, design, or the nature of the product made or handled by the [company]," id. §185b(e).

Moreover, the following burden-shifting framework is applicable to Law 80 claims:

> (1) the employee must [first] show that he or she has been discharged and allege that the dismissal was not justified; (2) the burden then shifts to the employer to show, by a preponderance of the evidence, that the dismissal was justified; and (3) if the employer shoulders that burden, the employee must rebut the showing of good cause.

García-García v. Costco Wholesale Corp., 878 F.3d 411, 420 (1st Cir. 2017).

In the case at hand, Rodríguez has met his initial burden under Law 80. It is undisputed that he was terminated from his employment with DHL, and he alleges in his Amended Complaint that such discharge was not justified. "Under Law 80, once an employee proves that he was discharged and alleges that his dismissal was unjustified, his employer must establish by a preponderance of the evidence that the discharge was for good cause." Hoyos v. Telecorp Comm., Inc., 488 F.3d 1, 6 (1st Cir. 2007) (citing 29 L.P.R.A. § 185b).

"Good cause for dismissal is related to the proper and normal operation of the establishment." Id.; see also Álvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998) ("A discharge made by mere whim or fancy of the employer or without cause related to the proper and normal operation of the establishment shall not be considered as a discharge for [just] cause."). Construing Puerto Rico law, the First Circuit has described what an employer must show "to establish just cause under Law 80." See Pérez v. Horizon Lines, Inc., 804 F.3d 1, 9 (1st Cir. 2015). "[A]n employer need only demonstrate that it had a reasonable basis to believe" that the case's circumstances fit within an example of just cause listed in the statute. See id. "Law 80's language forbidding 'an employer [from] act[ing] on a

'whim'' suggests 'that a 'just' discharge is one where an employer provides a considered, non-arbitrary reason for an employee's termination that bears some relationship to the [company's] operation.'" Villeneuve v. Avon Products, Inc., 919 F.3d 40, 48 (1st Cir. 2019) (quoting Horizon Lines, Inc., 804 F.3d at 9). Moreover, the Court has repeatedly emphasized that judges do not serve "as [a] super personnel department[ ], assessing the merits— or even the rationality—of employers' nondiscriminatory business decisions." Id. at 48 (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991)).

In the case at hand, the Court analyzed Rodríguez's ADA claims and found that he was not a covered qualified individual and further that his request for indefinite leave and for reassignment was unreasonable. Therefore, Rodríguez's discrimination and failure to accommodate claims under ADA were not established. In addition, DHL proved, by a preponderance of the evidence, that Rodríguez was discharged as a result of his continued absence for almost 18 months and his inability to return to work at DHL, where his leadership was required as he occupied the highest-ranking position in the business. Specifically, DHL established that Rodríguez was unable "to perform the work at reasonable levels as required by the employer" in a job as Area Operations Manager, which among other things "provides operational management and support" and "ensures compliance with safety, security,

Civil No. 22-01539(GMM)
Page -36-

regulatory, and company policies." *See* (Docket No. 52-22); 29 L.P.R. § 185b(b). This constitutes just cause under Law 80.

Finally, Rodríguez has not set forth on the record anything that rebuts this showing of just cause. To satisfy this burden and withstand summary judgment, Rodríguez was required to do more than "cast doubt" on DHL's proffered reason for his discharge; instead, Rodríguez had to "adduce probative evidence that [DHL] did not genuinely believe in or did not in fact terminate [Rodríguez] for the given reason." García-García v. Costco Wholesale Corp., 878 F.3d 411, 421 (1st Cir. 2017).

As such, even viewing the facts in the light most favorable to Rodríguez, DHL has sufficiently established that it terminated him for just cause under Law 80.

### V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** DHL's *Motion for Summary Judgment.* Rodríguez's Amended Complaint is DISMISSED WITH PREJUDICE. Judgment of Dismissal shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, January 7, 2025.


s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE